UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

Federal Insurance Company,

       Plaintiff                                   Court File No.

v.                                          **COMPLAINT FOR DECLARATORY JUDGMENT**

3M Company,

       Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, Federal Insurance Company ("Federal"), by and through its attorneys, MEAGHER & GEER and TRESSLER LLP, and for its Complaint for Declaratory Judgment against Defendant, 3M Company ("3M"), states as follows:

### STATEMENT OF THE CASE

1. This is an action for declaratory judgment pursuant to 28 U.S.C. §2201, in which Federal requests the Court to declare the rights, duties, and obligations of the parties under Customarq Series Life Sciences Insurance Program insurance policies issued by Federal to Arizant Healthcare, Inc. ("Arizant"), bearing policy number 7498-46-66 MIN, effective for consecutive policy periods from April 1, 2003 through October 13, 2010 (collectively, the "Policies").

2. Upon information and belief, Defendant 3M is the successor in interest to Arizant under the Policies, as 3M acquired Arizant on or about October 13, 2010.

**PARTIES**

3. Federal is an insurance company incorporated under Indiana law with its principal place of business in New Jersey.

4. 3M Company is a corporation incorporated under Delaware law with its principal place of business in Minnesota.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00 exclusive of costs and interest, and there is complete diversity of citizenship between the Plaintiff and Defendant.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 as 3M's principal place of business is located in this District.

**FACTUAL BACKGROUND**

7. Arizant designed, manufactured, and sold the Bair Hugger Forced Air Warming device ("Bair Hugger"), which is a medical device that forces warm air through a blanket placed over a patient during surgery, in order to maintain body temperature.

8. Numerous personal injury lawsuits were filed against Arizant and 3M, alleging the Bair Hugger increases the risk of infection during and after surgery, resulting in post-surgery infections and related complications.

9. These lawsuits were consolidated in a multi-district litigation, *In re: Bair Hugger Forced Warming Devices Products Liability Litigation*, MDL No. 15-2666, in the United States District Court for the District of Minnesota ("Bair Hugger Litigation"). A copy of the Master Long Form Complaint filed in the Bair Hugger Litigation is attached hereto as Exhibit 1.

10. United States District Judge Joan N. Ericksen granted summary judgment for the defendants in the Bair Hugger Litigation on July 31, 2019. *In re: Bair Hugger Forced Warming Devices Products Liability Litigation*, 2019 WL 4394812 (D. Minn. July 31, 2019). A copy of Judge Ericksen's decision is attached hereto as Exhibit 2.

11. The Eight Circuit Court of Appeals, on August 16, 2021, reversed the grant of summary judgment for the defendants and remanded for further proceedings. *In re: Bair Hugger Forced Warming Devices Products Liability Litigation*, 2021 WL 3612753 (8th Cir. Aug. 16, 2021). A copy of the Eighth Circuit's decision is attached hereto as Exhibit 3.

12. Federal issued to Arizant a Customarq Series Life Sciences Insurance Program policy, number 7498-46-66 MIN, effective April 1, 2003 to April 1, 2004 ("2003-2004 Policy"). A certified copy of the 2003-2004 Policy is attached hereto as Exhibit 4.

13. The 2003-2004 Policy provides liability limits of $10 million per Occurrence and $10 million in the Aggregate, with a $10,000 per Occurrence deductible.

14. Federal issued to Arizant a Customarq Series Life Sciences Insurance Program policy, number 7498-46-66 MIN, effective April 1, 2004 to April 1, 2005 ("2004-2005 Policy"). A certified copy of the 2004-2005 Policy is attached hereto as Exhibit 5.

15. The 2004-2005 Policy provides liability limits of $10 million per Occurrence and $10 million in the Aggregate, with a $10,000 per Occurrence deductible.

16. Federal issued to Arizant a Customarq Series Life Sciences Insurance Program policy, number 7498-46-66 MIN, effective April 1, 2005 to April 1, 2006 ("2005-2006 Policy"). A certified copy of the 2005-2006 Policy is attached hereto as Exhibit 6.

17. The 2005-2006 Policy provides liability limits of $10 million per Occurrence and $10 million in the Aggregate, with a $25,000 per Occurrence deductible.

18. Federal issued to Arizant a Customarq Series Life Sciences Insurance Program policy, number 7498-46-66 MIN, effective April 1, 2006 to April 1, 2007 ("2006-2007 Policy"). A certified copy of the 2006-2007 Policy is attached hereto as Exhibit 7.

19. The 2006-2007 Policy provides liability limits of $5 million per Occurrence and $5 million in the Aggregate, with a $25,000 per Occurrence deductible.

20. Federal issued to Arizant a Customarq Series Life Sciences Insurance Program policy, number 7498-46-66 MIN, effective April 1, 2007 to April 1, 2008 ("2007-2008 Policy"). A certified copy of the 2007-2008 Policy is attached hereto as Exhibit 8.

21. The 2007-2008 Policy provides liability limits of $5 million per Occurrence and $5 million in the Aggregate, with a $100,000 per Occurrence deductible.

22. Federal issued to Arizant a Customarq Series Life Sciences Insurance Program policy, number 7498-46-66 MIN, effective April 1, 2008 to April 1, 2009 ("2008-2009 Policy"). A certified copy of the 2008-2009 Policy is attached hereto as Exhibit 9.

23. The 2008-2009 Policy provides liability limits of $5 million per Occurrence and $5 million in the Aggregate, with a $100,000 per Event deductible.

24. Federal issued to Arizant a Customarq Series Life Sciences Insurance Program policy, number 7498-46-66 MIN, effective April 1, 2009 to April 1, 2010 ("2009-2010 Policy"). A certified copy of the 2009-2010 Policy is attached hereto as Exhibit 10.

25. The 2009-2010 Policy provides liability limits of $5 million per Occurrence and $5 million in the Aggregate, with a $50,000 per Event deductible.

26. Federal issued to Arizant a Customarq Series Life Sciences Insurance Program policy, number 7498-46-66 MIN, initially effective April 1, 2010 to April 1, 2011, but this policy

4

was cancelled at the insured's request, effective October 13, 2010 ("2010 Policy"). A certified copy of the 2010 Policy is attached hereto as Exhibit 11.

27. The 2010 Policy provides liability limits of $5 million per Occurrence and $5 million in the Aggregate, with a $50,000 per Event deductible.

28. Subject to their terms, conditions, limitations, exclusions, and endorsements, the 2003-2004 Policy and 2004-2005 Policy provide Products/Completed Operations – Occurrence coverage, form number 80-02-2084 (4-01), which provides in relevant part:

> *Coverages*
> *Bodily Injury And Property Damage Liability Coverage*
> Subject to all of the terms and conditions of this insurance, we will pay damages that the insured becomes legally obligated to pay by reason of liability:
> - imposed by law; or
> - assumed in an **insured contract**;
>
> for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.
>
> This coverage applies only to such **bodily injury** or **property damage** included within the **products-completed operations hazard** that occurs during the policy period.
>
> Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury**.
>
> Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

29. Subject to their terms, conditions, limitations, exclusions, and endorsements, the 2005-2006 Policy, 2006-2007 Policy, 2007-2008 Policy, 2008-2009 Policy, 2009-2010 Policy, and 2010 Policy provide Products/Completed Operations – Occurrence coverage, form number 80-02-2084 (8-04), which provides in relevant part:

5

*Coverages*

*Bodily Injury And Property Damage Products-Completed Operations Liability Coverage*

Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:
- imposed by law; or
- assumed in an **insured contract**;

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage:**
- that occurs during the policy period; and
- included in the **products-completed operations hazard.**

Damages for **bodily injury** include damages claimed by a person or organization for care, loss of services or death resulting at any time from the **bodily injury**.

The most we will pay hereunder is fixed as set forth in the Limits Of Insurance section of this contract.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

\*\*\*

30. The Policies define bodily injury as follows:

*Bodily injury*
**Bodily injury** means physical:
- injury;
- sickness; or
- disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

31. The Policies define occurrence as follows:

*Occurrence*
**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

32. The 2003-2004 Policy, 2004-2005 Policy, 2005-2006 Policy, 2006-2007 Policy, and 2007-2008 Policy contain a Deductible Endorsement, form number 80-02-2122 (4-01)), which states in relevant part:

*Limits Of Insurance*
*Deductible*

Under Limits Of Insurance, the following provision is added:

Our obligation to pay damages, defense costs and other Supplementary Payments on behalf of the **insured** for **bodily injury** and **property damage** applies only to the amount of damages, defense costs and other Supplementary Payments in excess of the deductible amount shown in the Declarations as applicable to such coverages.

The deductible amount shown in the Declarations applies as follows:

Per Occurrence basis - the deductible amount applies to all damages, defense costs and other Supplementary Payments because of:
- all **bodily injury** or **property damage** as the result of any one **occurrence**, regardless of the number of persons or organizations who sustain damages because of that **occurrence**; or
- all **bodily injury** and **property damage** as the result of any one **occurrence**, regardless of the number of persons or organizations who sustain damages because of that **occurrence**.

Deductible payments by the **insured** will not reduce the Limits Of Insurance.

We may pay any part or all of the deductible amount to settle any claim or suit and then bill you for reimbursement of any such payment that we have made. Within thirty (30) days of our billing, you shall reimburse us in full for any payments that we have made which are below the deductible amount. A failure to reimburse us shall be equivalent to non-payment of premium for purpose of cancellation of this policy by us.

33. The 2008-2009 Policy, 2009-2010 Policy, and 2010 Policy contain a Deductible Endorsement, form number 80-02-6595 (5-06), which states in relevant part:

***Deductibles***

***Basis And Amounts Of Deductibles***

The following section, titled Deductibles, is added to the forms described above and replaces any applicable deductible provisions contained therein.

As used in this endorsement, words and phrases that appear in "quotation marks" have special meanings as described in the Deductible Definitions provision of this endorsement.

The provisions of this Deductible section apply to the Coverages as indicated in the Declarations and this endorsement. Each Deductible applies separately from and in addition to any other Deductible.

If the applicable Deductible is indicated to apply on the basis of:

- Each Claim, then the amount of the Deductible applies separately to the sum of amounts described in the provision titled Deductible Obligations, in connection with loss allocable to each separate person and organization that arises out of each separate "event."
- Each "Event," then the amount of the Deductible applies separately to the sum of amounts described in the provision titled Deductible Obligations, in connection with loss that arises out of each separate "event."

Deductible amounts:

8

    A. starting with the beginning of the policy period shown in the Declarations, apply separately to each consecutive annual period and to any remaining period and to any extension period.

    B. will not be less than the amounts as indicated in the Declarations and this endorsement, regardless of whether this insurance (or this endorsement) is:
        1. issued for a policy period of less than twelve (12) months; or
        2. terminated before the end of the policy period shown in the Declarations for any reason.

\*\*\*

***Limits Of Insurance***
*Each Claim Or "Event"*

The following provision is added to Limits Of Insurance.

If the applicable Limit of Insurance applies on an each claim or each "event" basis, then such limit (other than an aggregate limit) will be reduced by "damages/loss" paid or incurred within the Deductible.

If expenses are described as reducing the Limits Of Insurance of the applicable Coverage, then such expenses within the Deductible will reduce such Limits Of Insurance.

The Limits Of Insurance will not be increased or reinstated regardless of the applicability of any Deductible or any amount that you must pay or reimburse in connection with any Deductible.

\*\*\*

***Deductible Definitions***

\*\*\*

"*Event*"
"Event" refers to an occurrence, offense, wrongful act or other cause of loss as described under the applicable Coverage.

34. Upon information and belief, prior to April 1, 2003, Arizant was insured for products liability by insurance companies other than Federal (or its affiliates).

9

35. Upon information and belief, after October 13, 2010, 3M was self-insured for products liability.

36. Over a period of time, Arizant tendered various claims in the Bair Hugger Litigation to Federal.

37. On September 13, 2016 and October 28, 2016, Federal issued letters to Arizant, agreeing to participate in funding Arizant's defense in the Bair Hugger Litigation while continuing to evaluate coverage, subject to the terms and conditions of the deductibles and a reservation of rights. Federal further advised that a claimant in the Bair Hugger Litigation triggers only the Federal policy in effect at the time of that claimant's surgery. Also, because the "occurrence" or "event" under the Policies takes place when a claimant suffers injury, Federal advised that each Bair Hugger Litigation claimant's surgery represents a separate "occurrence" or "event". Therefore, Arizant or 3M owes a separate "per occurrence" or "per event" deductible for each patient who underwent surgery during a Federal policy period. Copies of Federal's September 13, 2016 and October 28, 2016 reservation of rights letters are attached hereto as Exhibit 12 and Exhibit 13.

38. Upon information and belief, 3M disputes Federal's position on the number of occurrences or events, and contends that there is a single "occurrence" or "event" at issue in the Bair Hugger Litigation, namely the design and manufacture of an allegedly defective product.

39. Upon information and belief, 3M contends Arizant or 3M owes only one deductible for the entirety of the Bair Hugger Litigation, despite the fact that thousands of lawsuits -- involving thousands of separate surgeries which took place at different times, in different locations, involving different doctors and patients performing surgeries in different conditions -- were consolidated into the Bair Hugger Litigation.

40. 3M takes this single "occurrence" or "event" and single deductible position even though a virtually identical position by 3M was rejected by the Minnesota Court of Appeals in *In re Silicone Implant Ins. Coverage Litigation*, 652 N.W.2d 46, 67-68 (Minn. App. Ct. 2002), affirmed in part, reversed on other issues by 667 N.W.2d 405 (Minn. 2003).

41. In addition, Federal and 3M disagree regarding the amount of defense costs which was necessary and reasonable to defend Arizant and 3M in the Bair Hugger Litigation.

42. Therefore, there are ripe and justiciable controversies between the parties requiring declaratory relief by this Court.

**COUNT I**
**DECLARATORY JUDGMENT THAT**
**EACH CLAIMANT CONSTITUTES A SEPARATE OCCURRENCE OR EVENT REQUIRING SATISFACTION OF A SEPARARATE PER OCCURRENCE OR PER EVENT DEDUCTIBLE**

43. Federal incorporates and restates the allegations of Paragraphs 1 through 42 above as if fully set forth herein.

44. Pursuant to the plain and unambiguous language of the Policies and controlling law, each claimant who actually or allegedly sustained injury from the Bair Hugger constitutes a separate "occurrence" or "event."

45. All actual or alleged injury to a claimant in the Bair Hugger Litigation can be traced to a discrete event – the use of the Bair Hugger during surgery.

46. All actual or alleged injury to a claimant that is traceable to the use of the Bair Hugger should be allocated to the policy in effect at the time of that claimant's surgery.

47. Each claimant thus triggers only the Federal policy in effect at the time of surgery.

48. Because each claimant who actually or allegedly sustained injury from the Bair Hugger constitutes a separate "occurrence" or "event," triggering only the Policy in effect at the

11

time of surgery, 3M is required to pay a separate per "occurrence" or per "event" deductible for each claimant who underwent surgery using the Bair Hugger during each Federal policy period.

49. Therefore, Federal is entitled to a declaration that 3M, as successor to Arizant under the Policies, is required to pay a separate per "occurrence" or per "event" deductible for each claimant who underwent surgery using the Bair Hugger during each Federal policy period.

## COUNT II
## DECLARATORY JUDGMENT THAT
## DEFENSE COSTS SHOULD BE ALLOCATED BY NUMBER OF CLAIMANTS IN EACH POLICY PERIOD

50. Federal incorporates and restates the allegations of Paragraphs 1 through 49 above as if fully set forth herein.

51. The Federal policies apply only to "bodily injury" that takes place during the policy period. The "bodily injury" alleged in the Bair Hugger Litigation takes place at the time of the surgery. Not all surgeries at issue in the Bair Hugger Litigation took place during Federal's policy periods. Many surgeries at issue in the Bair Hugger Litigation took place before inception of the 2003-2004 Policy or after expiration of the 2010 Policy.

52. As the Federal Policies only cover "bodily injury" that takes place during the policy period, only those claimants whose surgeries that took place during Federal's policy periods are even potentially covered.

53. Therefore, Federal is entitled to a declaration that Arizant's or 3M's defense costs in the Bair Hugger Litigation must be allocated, during each billing period by defense counsel, based upon the proportion of claimants then involved in the Bair Hugger Litigation whose surgeries took place during a Federal policy period relative to those claimants then involved in the Bair Hugger Litigation whose surgeries took place outside the Federal policy periods.

54. In the alternative, Federal is entitled to a declaration that Arizant's and 3M's defense costs in the Bair Hugger Litigation must be apportioned by equal shares among 3M's implicated insurers and 3M (as a self-insured).

## COUNT III
## DECLARATORY JUDGMENT
## NECESSARY AND REASONABLE POST-NOTICE DEFENSE COSTS

55. Federal incorporates and restates the allegations of Paragraphs 1 through 54 above as if fully set forth herein.

56. 3M alleges that Arizant and 3M have already incurred very substantial amounts, well in excess of the jurisdictional minimum for federal diversity jurisdiction, in defending the Bair Hugger Litigation.

57. In light of the Eighth Circuit's recent reversal of the summary judgment in favor of the defendants in the Bair Hugger Litigation, Arizant and 3M will incur additional significant amounts defending the Bair Hugger Litigation

58. Federal's obligation to reimburse 3M (if any) is only for necessary and reasonable defense costs incurred after notice to Federal, and only necessary and reasonable post-notice defense costs may be applied against the deductibles under the Policies.

59. Federal disputes that all of 3M's claimed defense costs in the Bair Hugger Litigation were incurred post-notice to Federal or are necessary and reasonable.

60. Therefore, Federal is entitled to a determination and declaration of the amount of necessary and reasonable post-notice defense costs incurred by Arizant and 3M in the Bair Hugger Litigation.

WHEREFORE Plaintiff, Federal Insurance Company, respectfully requests that this Court enter judgment in its favor as follows:

A. Declaring that each claimant who sustained actual or alleged injury from the Bair Hugger constitutes a separate "occurrence" or "event" under the Policies;

B. Declaring that all actual or alleged injury to an individual claimant in the Bair Hugger Litigation can be traced to a discrete event – the use of the Bair Hugger during surgery;

C. Declaring that, because the Federal Policies only cover "bodily injury" that takes place during the policy period and the "bodily injury" at issue in the Bair Hugger Litigation takes place at the time of surgery, an individual claimant triggers only the Federal policy in effect at the time of that claimant's surgery;

D. Declaring that 3M, as successor to Arizant under the Policies, is required to pay a separate per "occurrence" or per "event" deductible for each claimant who underwent surgery using the Bair Hugger during each Federal policy period;

E. Declaring that Arizant's or 3M's defense costs in the Bair Hugger Litigation must be allocated, during each billing period by defense counsel, based upon the proportion of claimants then involved in the Bair Hugger Litigation whose surgeries took place during a Federal policy period relative to the claimants then involved in the Bair Hugger Litigation whose surgeries took place outside the Federal policy periods; in the alternative, declaring that Arizant's and 3M's defense costs in the Bair Hugger Litigation must be apportioned by equal shares among 3M's implicated insurers and 3M (as a self-insured);

F. Determining and declaring the amount of necessary and reasonable post-notice defense costs incurred by Arizant and 3M in the Bair Hugger Litigation; and

G. Granting Federal Insurance Company all other relief which this Court deems just and proper, including costs of this suit.

**JURY DEMAND**

Plaintiff hereby demands a jury trial as to all issues so triable.

Respectfully Submitted,

Dated: September 22, 2021

By: */s/ Charles E. Spevacek*
Charles E. Spevacek (MN # 126044)
Meagher + Geer, P.L.L.P.
33 S. Sixth Street
Minneapolis, MN 55402
Phone: (612) 347-9171
Fax: (612) 877-3066
cspevacek@meagher.com

and

Todd S. Schenk (*pro hac vice admission pending*)
Zachary Greening (*pro hac vice admission pending*)
Catherine Geisler (*pro hac vice admission pending*)
Tressler LLP
233 South Wacker Drive
61st Floor
Chicago, Illinois 60606
Phone: (312) 627-4151
Fax: (312) 627-1717
tschenk@tresslerllp.com
zgreening@tresslerllp.com
cgeisler@tresslerllp.com

*Attorneys for Plaintiff Federal Insurance Company*